731 A.2d 86 (1999)
322 N.J. Super. 401
STATE of New Jersey, Plaintiff-Appellant/ Cross-Respondent,
v.
Robert Troy WARRINER, Sr., Defendant-Respondent/ Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1999.
Decided June 28, 1999.
*88 Michael J. Williams, Deputy Attorney General, for appellant/cross-respondent (Paul H. Zoubek, Acting Attorney General, attorney; Mr. Williams, of counsel and on the brief).
Frank Pisano, III, Montville, for respondent/cross-appellant (Needleman and Pisano, attorneys; Gary J. Needleman, of counsel; Mr. Pisano, of counsel and on the brief).
Before Judges MUIR, Jr., KEEFE, and COBURN.
*87 The opinion of the court was delivered by MUIR, Jr., P.J.A.D.
As a consequence of a Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -33, restraining order which authorized the police to seize all weapons at the defendant's residence, an Atlantic County grand jury indicted defendant for unlawful possession of an assault firearm. N.J.S.A. 2C:39-5f. Subsequently, the trial court affirmed the denial of defendant's application for admission into the county's Pretrial Intervention (PTI) program. However, it dismissed the indictment on grounds the provision of N.J.S.A. 2C:39-1w(1) listing "M1 carbine type" as an assault weapon was unconstitutionally vague, both facially and as applied.
The State appeals from the order dismissing the indictment. Defendant cross-appeals from the order affirming denial of his PTI application. We reverse the former order and affirm the latter order.

I
The events giving rise to defendant's indictment began when the police received a 911 domestic violence telephone call from defendant's wife. She alleged defendant had pointed a shotgun at her and had "racked" the gun. After some ambivalence, apparently in part attributable to her fear of retribution by defendant, the wife filed a formal domestic violence complaint.
The ensuing temporary restraining order led to authorization for the police to remove defendant's firearms from the marital residence. When the police arrived at the Warriner home, defendant turned over the weapons he had in his possession. Defendant possessed twenty-four weapons. Twenty-three of those weapons, the State concedes, were legally possessed. Those twenty-three weapons were kept in a central location. The twenty-fourth was secreted in the cellar. As to that weapon, which is the subject of the indictment, defendant informed an officer, after turning over the other twenty-three weapons, that he had one "assault rifle" which might be illegal. The information corroborates a statement defendant's wife had earlier given the police as to the belief *89 the weapon was illegal. The assault rifle, with a barrel labeled "Universal M1 Autoloading Carbine" and an attached telescopic sight, was "hidden behind a pile of miscellaneous items and covered with a piece of insulation."

II
The trial court found N.J.S.A. 2C:39-1w(1), which lists an "M1 carbine type" as an assault weapon, to be vague both facially and as applied. We find no vagueness in either respect.[1]
N.J.S.A. 2C:39-1 defines terms applicable to weapons possession crimes and weapons possession licensing provisions of the Criminal Code. It defines the term assault firearm by creating essentially five categories. See N.J.S.A. 2C:39-1w(1)-(5). The first category contains specific brand names, such as "Australian Automatic Arms SAR"; specific types, such as "M1 carbine type" or "UZI type semi-automatic firearms"; and specific series, such as "Colt AR-15 series and CAR-15 series." In this instance, we are concerned only with the "M1 carbine type" classification. See N.J.S.A. 2C:39-1w(1).
The constitutional ban on vague law is designed to invalidate statutory enactments "that fail to provide adequate notice of their scope and sufficient guidance to their application." State v. Cameron, 100 N.J. 586, 591, 498 A.2d 1217 (1985). "The requirement of statutory clarity `is essentially a procedural due process concept grounded in notions of fair play.'" Ibid. (quoting State v. Lashinsky, 81 N.J. 1, 7, 404 A.2d 1121 (1979)). A statute is facially vague only if it is "`impermissibly vague in all interpretations.'" State v. Saunders, 302 N.J.Super. 509, 520, 695 A.2d 722 (App.Div.1997) (quoting Village of Hoffman Estates, 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L. Ed.2d 362, 369 (1982)).
The issue of facial vagueness of the "M1 carbine type" category was recently addressed in Coalition of NJ Sportsmen, Inc. v. Whitman, 44 F.Supp.2d 666 (D.N.J. 1999). The Federal District Court rejected the facial vagueness claim. Id. at 670-73.
In Benjamin v. Bailey, 234 Conn. 455, 662 A.2d 1226, 1228 (1995), similar provisions of Connecticut's firearms statute withstood a challenge of facial vagueness. In particular, the Connecticut Court found phrases "AK-47 type," "MAC-10," "MAC-11," and "MAC-11 Carbine type" were sufficiently clear to satisfy due process. Id. at 1241-42.
While neither decision is binding on this court, we find them persuasive. "M1 carbine" has an essential meaning. It is a basic design of a weapon. Type simply gives notice that a firearm with that basic design qualifies as an assault weapon. As such, it gives adequate notice. To conclude otherwise would improperly require a "`linguistic analysis conducted in a vacuum' " as to what is a proscribed weapon. See State v. Saunders, supra, 302 N.J.Super. at 521, 695 A.2d 722 (quoting In re Suspension of DeMarco, 83 N.J. 25, 37, 414 A.2d 1339 (1980)).
A statute is vague as applied if "the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced." State v. Cameron, supra, 100 N.J. at 593, 498 A.2d 1217. The conventional test to determine vagueness in this context is whether "a person of ordinary intelligence may reasonably determine what conduct is prohibited so that he or she may act in conformity with the law." State v. Saunders, supra, 302 N.J.Super. at 520-21, 695 A.2d 722. Again, the test does not allow "`linguistic analysis conducted in a vacuum'" but one conducted in "the reality in which the *90 [statutory] provision is to be applied." Id. at 521, 695 A.2d 722.
Viewed in the context of these principles, we are satisfied the "M1 carbine type" provision is not unconstitutionally vague as applied to the defendant in this instance. The statute identified an "M1 carbine type" weapon as an assault weapon. The weapon defendant owned had a barrel stamp that read "Universal M1 Autoloading Carbine." That stamp gave notice the gun had the basic design of the proscribed weapon-an M1 carbine. Any person of reasonable intelligence would have been alerted to the fact that the weapon at issue was an illegal weapon. In fact, by secreting the weapon in his cellar, as defendant did, he evidenced an awareness that the gun was a proscribed assault weapon. We find it ingenuous to suggest, as defendant does, that he had no way of knowing that the weapon at issue was an "M1 carbine type" when the weapon was stamped with an almost identical designation.
Simply put, the statute at issue is not unconstitutionally vague as applied to defendant. The statute is entitled to a presumption of validity that cannot be lightly disregarded. See Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564-65, 350 A.2d 1 (1975); State v. Saunders, supra, 302 N.J.Super. at 517, 695 A.2d 722. The record before us and the arguments raised fail to persuasively establish the unconstitutionality claimed. Consequently, we reverse the order dismissing the indictment.

III
Defendant's cross-appeal contends the trial court erred when it refused to overrule the decisions of the PTI program director and prosecutor denying his admission to the program. We disagree.
The final notice of rejection by the program director and the prosecutor relied upon PTI Guideline 3(i)(3). The notice concluded:
What seems apparent is that your client is an avid gun collector who possessed a legal firearm's I.D. card. He had secured all but the illegal rifle in one location in his home. It seems that he went to some extent to hide what he apparently knew to be an illegal weapon. This possession was seemingly not held under a misunderstanding of the law but rather in defiance of it. This behavior, which appears to have been calculated and deliberate, suggests a behavior pattern that may not be significantly altered or deterred through diversionary measures. Taken in context with the underlying domestic violence filing[,] his behavior certainly seems to be wrought with the potential for violence.
The notice, while acknowledging that defendant is "a 34-year-old, gainfully employed, father of two children" with no additional arrest record, recognized those circumstances did not outweigh the "concerns" expressed in its conclusion.
Judicial review of prosecutorial decisions on diversion of a defendant into PTI is "available to check only the most egregious examples of injustice and unfairness." State v. Leonardis, 73 N.J. 360, 384, 375 A.2d 607 (1977). Rarely are prosecutorial decisions to reject overturned. See State v. Baynes, 148 N.J. 434, 443, 690 A.2d 594 (1997). To overcome a prosecutor's veto of his or her PTI application, a defendant must clearly and convincingly show the prosecutor's refusal to sanction admission into the program was based on "a patent and gross abuse of discretion." State v. Leonardis, supra, 73 N.J. at 382, 375 A.2d 607.
State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979), defined "patent and gross abuse of discretion." Abuse of discretion is demonstrated if defendant can show the prosecutor's veto (1) was not premised on consideration of all relevant factors; (2) was based on consideration of irrelevant or inappropriate factors; or (3) amounted to a clear error in judgment. *91 Ibid. There is a presumption the prosecutor considered all relevant factors. Id. at 94, 402 A.2d 217. For a veto to be "patent and gross," defendant must show a clear subversion of the goals underlying PTI.
Defendant failed to meet his burden to overcome the veto of his application for admission into the Atlantic County PTI program. The conclusory paragraph of the final notice of rejection discloses the consideration of relevant factors. There is no demonstration it considered irrelevant or inappropriate factors. There is also no evidence that the veto amounted to a clear error in judgment. Accordingly, the order denying defendant's motion to compel admission is consequently affirmed.
Reversed in part; affirmed in part.
NOTES
[1] The order under appeal conflicts with the trial court's oral decision. We address the grounds contained in the court's oral decision. See State v. Pohlabel, 40 N.J.Super. 416, 423, 123 A.2d 391 (App.Div.1956).