779 A.2d 429

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANTHONY PETRUCCI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 1, 2001—Decided July 20, 2001.

538

Before Judges SKILLMAN, CONLEY and LESEMANN.

*Robin Kay Lord* argued the cause for appellant.

*Kristen A. McKearney*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General, attorney; *Ms. McKearney*, of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The assault firearms statute, *L*. 1990, *c*. 32, requires the imposition of a ten year period of parole ineligibility upon any person convicted of possession of an "assault firearm with the intent to use it against the person of another." *N.J.S.A.* 2C:43–6g. The statute defines "assault firearm" to include not only any one of thirty-six specifically enumerated firearms and types of firearms, *N.J.S.A.* 2C:39–1w(1), but also any other firearm that is "substantially identical" to one of the enumerated firearms, *N.J.S.A.* 2C:39–1w(2). Defendant argues that the inclusion within the definition of "assault firearm" of any firearm that is "substantially identical" to a specifically enumerated firearm or type of firearm is unconstitutionally vague. Alternatively, defendant argues that the determination of whether a firearm used in the commission of an offense is substantially identical to an enumerated firearm must be made by a jury beyond a reasonable doubt. We reject defendant's claim that the definition of "assault firearm" is unconstitutionally vague. However, we conclude that a factual determination as to whether a particular firearm is "substantially identical" to an enumerated firearm or type of firearm must be made by a jury under the beyond a reasonable doubt standard of proof. Accordingly, we vacate defendant's judgment of conviction and remand the case to the trial court.

Defendant was indicted for second degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(1), unlawful possession of an assault firearm, in violation of *N.J.S.A.* 2C:39–5f, possession of a firearm with the purpose of using it unlawfully against the person of another, in violation of *N.J.S.A.* 2C:39–4a, possession of a firearm with the purpose of using it unlawfully against the property of

another, in violation of *N.J.S.A.* 2C:39–4a, and criminal mischief, in violation of *N.J.S.A.* 2C:17–3a(1).

On the day of trial, defendant entered into a plea bargain under which he agreed to plead guilty to the weapons charges and the State agreed to dismiss the aggravated assault and criminal mischief charges. The plea bargain stipulated that defendant could "argue any issue relating to sentence."

At the plea hearing, defendant admitted that on the evening of May 20, 1992, while in an intoxicated condition, he drove to the home of his former girlfriend, with whom he was angry for throwing eggs on his new girlfriend's car, armed with a loaded rifle. After observing his former girlfriend inside the house watching television, he discharged seven to nine shots into the side of the house. Defendant testified that his purpose in shooting the gun was to scare his former girlfriend so she would stop harassing his new girlfriend. None of the shots struck anyone inside the house.

At the plea hearing, the parties agreed that evidence and legal argument could be presented prior to sentencing as to whether defendant's purpose in possessing the weapon was "to use it unlawfully against the person" and whether the weapon he used was an "assault firearm" within the intent of *N.J.S.A.* 2C:39–1w. The parties recognized that these determinations would be critical to sentencing, because *N.J.S.A.* 2C:43–6g mandates the imposition of a ten year period of parole ineligibility upon "[a]ny person who has been convicted under [*N.J.S.A.* 2C:39–4a] of possessing [an] . . . assault firearm with intent to use it against the person of another."

At the hearing on these issues, Detective Robert Cowan of the Mercer County Prosecutor's Office testified that the weapon defendant used, which is manufactured in China by "Norinco," is the same as a Russian-made "AKM," except that an AKM is "fully automatic" and the Norinco is "semi-automatic." Cowan also testified that the "AKM" is a model of the "Avtomat Kalashnikov," which is one of the types of firearms *N.J.S.A.* 2C:39–1w designates

as an "assault rifle." In addition, the State introduced Detective Cowan's affidavit, which discusses the design specifications of the AKM and Norinco as well as various other similar weapons. The State also introduced an affidavit by Ron Sasileo, an investigator employed by the Division of Criminal Justice, who expressed the opinion that the Norinco used by defendant is "substantially identical to the Avtomat Kalashnikov type rifles," but noted that there are various differences between the rifles:

a. The Avtomats are all selector switch automatic/semi-automatic weapons. The NORINCO is semi-automatic only.

b. The Avtomats are produced by the Soviet government for military use. The NORINCO is produced by a private company in China for sale on the open market.

c. The Avtomats are 7.62 × 39, and in the AK-74, 5.45 in caliber. The subject NORINCO is 7.62 × 39.

d. In appearance, 5 of the Avtomats look similar except for such things as variants in the wood and the flash suppressor or compensator muzzle. The AKSU is distinctively different in appearance, however, that Avtomat is not very similar in appearance to the NORINCO. When produced with a folding stock the Avtomats look dissimilar in that part.

e. The NORINCO is stamped steel, the same as the AKM but not the same as the last of the AK-47 models.

. . . .

i. The NORINCO is the same approximate length as the early three Avtomats and AKM but not the AK-74 or AKSU (which is substantially shorter).

. . . .

l. The NORINCO has a compensator muzzle. Some Avtomats did, some had flash suppressors instead and the AKSU had a totally different muzzle. The muzzle on all are threaded for use of different apparatus.

Because Sasileo did not testify at the sentencing hearing, the record does not indicate the significance of these differences.

Based on this evidence, the trial court concluded that the Norinco is "substantially identical" to the AK-47 and AKM and thus is an "assault firearm" within the intent of *N.J.S.A.* 2C:39-1w. The court also concluded, based on defendant's own version of the offense, that defendant's purpose in possessing the Norinco was "to use it unlawfully against the person" of his former girlfriend. Consequently, the court concluded that it was required under *N.J.S.A.* 2C:43-6g to impose a ten year term of imprisonment without eligibility for parole for possession of a firearm with

the purpose of using it unlawfully against the person of another. The court also imposed a concurrent seven year term of imprisonment on defendant's conviction for possession of a firearm with the purpose of using it unlawfully against the property of another. The court merged defendant's conviction for unlawful possession of an assault firearm and dismissed the aggravated assault and criminal mischief charges.

Defendant subsequently filed a motion for reconsideration of his sentence. Defendant, who was then represented by new counsel, argued that he had previously received ineffective assistance of counsel because his trial counsel had presented a plea offer of seven years imprisonment, with three years of parole ineligibility, without informing him that if he rejected the offer, as he did, he would be subject to a ten year term of imprisonment without eligibility for parole. Defendant also argued that the part of the assault firearms statute under which he had been sentenced, which defines an "assault firearm" to include firearms that are "substantially identical" to any one of a list of enumerated firearms, is unconstitutionally vague, and that the assault firearms statute violates the Equal Protection Clause of the Fourteenth Amendment, because it provides the same period of parole ineligibility for possession of an assault firearm for the purpose of using it unlawfully against the person of another as for possession of a machine gun for such a purpose.

The trial court rejected defendant's arguments and denied his motion for reconsideration of the sentence, without prejudice to defendant reasserting his ineffective assistance of counsel claim in a petition for post conviction relief.

Defendant appeals from the judgment of conviction and denial of his motion for reconsideration. Defendant argues that the trial court erred in finding that he possessed a firearm with the purpose of using it unlawfully against the person of his former girlfriend, because he only intended to fire the rifle into the side of her house, and that the assault firearms statute is unconstitution-

al.[1] In addition, shortly before oral argument, defendant submitted a letter memorandum which argues that the assault firearms statute is unconstitutional, because it authorizes the trial court, rather than a jury, to determine whether a firearm is "substantially identical" to one of the assault firearms specifically enumerated in *N.J.S.A.* 2C:39-1w, and allows this determination to be made by a preponderance of the evidence rather than beyond a reasonable doubt. Because this argument is constitutional in nature, and there had been significant developments in the pertinent law after defendant's brief was filed, the court decided to entertain this argument, and directed the parties to file supplemental briefs.

We conclude that the trial court correctly found that defendant possessed a firearm with the purpose of using it unlawfully against the person of his former girlfriend. We also conclude that the assault firearms statute is not unconstitutionally vague and does not deprive defendant of equal protection of the law. However, to preserve the constitutionality of the assault firearms statute under the Due Process Clause of the Fifth Amendment and the jury trial guarantee of the Sixth Amendment to the United States Constitution, it must be construed to require the determination of whether a firearm is "substantially identical" to one of the firearms enumerated in *N.J.S.A.* 2C:39-1w to be made by a jury under the beyond a reasonable doubt standard. Accordingly, we vacate defendant's conviction and remand the case to the trial court for further proceedings in conformity with this opinion.

I

Defendant argues that the factual basis he provided for his guilty plea only warranted a finding that he intended to use the gun unlawfully against the property of another—that is, against the house occupied by his former girlfriend—and thus the trial

---

[1] Defendant's brief also argued that the trial court erred in rejecting his ineffective assistance of counsel claim. However, by an order entered on August 29, 2000, we ruled that by failing to file additional transcripts in accordance with an earlier order, defendant had waived this argument.

court erred in finding that his purpose was to use the gun unlawfully against the person of another, which is required for imposition of a mandatory ten year period of parole ineligibility under *N.J.S.A.* 2C:43–6g.

At the plea hearing, defendant admitted that he knew his former girlfriend was present when he fired seven to nine bullets into her house, and that his purpose in shooting the gun was to scare her so that she would stop harassing his new girlfriend. Thus, defendant's own version of the offense could have supported a conviction for either third-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(4) ("[k]nowingly under circumstances manifesting extreme indifference to the value of human life points a firearm ... at or in the direction of another, whether or not the actor believes it to be loaded") or simple assault, in violation of *N.J.S.A.* 2C:12–1a(3) ("[a]ttempts by physical menace to put another in fear of imminent serious bodily injury"). Assault is an offense against the person, not against property. Consequently, although defendant's argument would be correct if defendant's only purpose in possessing the gun had been to cause damage to the house occupied by his former girlfriend, defendant himself admitted that his purpose was to terrorize the victim, which is a crime against the person. *See State v. Mello,* 297 *N.J.Super.* 452, 466, 688 *A.*2d 622 (App.Div.1997).

## II

Defendant argues that the part of the definition of "assault firearm" in *N.J.S.A.* 2C:39–1w that includes not only thirty-six specifically designated firearms and types of firearms but also "any firearm manufactured under any designation which is *substantially identical* to any of the firearms listed above" (emphasis added), is unconstitutionally vague.

The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, paragraph 1, of the New Jersey Constitution prohibit unduly

vague laws. *Parker v. Levy*, 417 *U.S.* 733, 755, 94 *S.Ct.* 2547, 2561, 41 *L.Ed.*2d 439, 457 (1974); *State v. Cameron*, 100 *N.J.* 586, 591, 498 *A.*2d 1217 (1985). There are two basic policies that underlie this prohibition:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.
>
> [*Grayned v. City of Rockford*, 408 *U.S.* 104, 108–09, 92 *S.Ct.* 2294, 2298–99, 33 *L.Ed.*2d 222, 227–28 (1972).]

Defendant does not claim that there is any unconstitutional vagueness in the definition of the offense of possession of a firearm for an unlawful purpose. Defendant's argument is directed solely at the definition of an "assault firearm" contained in *N.J.S.A.* 2C:39–1w, as incorporated in *N.J.S.A.* 2C:43–6g, which provides that a person convicted of possession of an "assault firearm" for the purpose of using it unlawfully against the person of another is subject to an enhanced sentence, specifically a mandatory ten year term of imprisonment without eligibility for parole. Because defendant's possession of a firearm for an unlawful purpose would be violative of *N.J.S.A.* 2C:39–4a, regardless of whether the firearm he possessed fit within the definition of an "assault firearm," the alleged vagueness of *N.J.S.A.* 2C:39–1w does not implicate the policy of giving a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned, supra,* 408 *U.S.* at 108, 92 *S.Ct.* at 2298–99, 33 *L.Ed.*2d at 227. However, if the term "assault rifle" were not defined with sufficient clarity, it could result in "arbitrary and discriminatory enforcement" of the enhanced sentence mandated by *N.J.S.A.* 2C:43–6g.

*N.J.S.A.* 2C:39–1w(1) defines "assault firearm" to mean any one of thirty-six specifically enumerated firearms and types of firearms. The specifically enumerated types of firearms include:

"Avtomat Kalashnikov type semi-automatic firearms." *N.J.S.A.* 2C:39–1w(2) defines "assault weapon" also to mean: "Any firearm manufactured under any designation which is *substantially identical* to any of the firearms listed above." (Emphasis added.) Defendant contends that this provision is unconstitutionally vague.

The Third Circuit Court of Appeals, summarily affirming a District Court opinion, has rejected a similar challenge to the constitutionality of *N.J.S.A.* 2C:39–1w(2). *Coalition of New Jersey Sportsmen, Inc. v. Whitman,* 263 *F.*3d 157 (3d Cir.2001), *aff'g* 44 *F.Supp.*2d 666 (D.N.J.1999). The District Court opinion states in pertinent part:

> [I]t is inconceivable that any legislator could list all prohibited weapons, given their sheer numerosity and the ever evolving development of new weapons, often based on old designs. For example, defendants note that an April, 1998 Department of Treasury study found that 39 models of semiautomatic rifles were based on the AK47 design alone. According to the defendants, facts such as these necessitated the prohibition on "substantially identical" weapons.
>
> The phrase "substantially identical," while the subject of much confusion, does not so lack a "core" such that it should be declared facially vague at this time. Standing alone, the phrase is without meaning. But by reference to the prohibited list of weapons, the prohibited characteristics contained in the other definitions of assault firearms, and just a cursory examination of pictures of prohibited weapons, this court cannot conclude that the law is vague "in all of its applications." ... Significantly, as well, the Attorney General has issued guidelines available to the general public regarding this phrase. While the Legislature may not have been perfectly clear in its definitions, the Attorney General negated some of the confusion. A court should consider limiting constructions of the law offered by enforcement agencies. Under these circumstances, the phrase "substantially identical" cannot be said to completely lack a core.
>
> [*Id.* at 679–80.] [2]

---

[2] The Attorney General's Guidelines relied upon by the District Court provide in pertinent part:

> The term "substantial" means pertaining to the substance, matter, material or essence of a thing. The term "identical" means exactly the same. Hence, a firearm is substantially identical to another only if it is identical in all material, essential respects. A firearm is not substantially identical to a listed assault firearm unless it is identical except for differences which do not alter the essential nature of the firearm.
>
> The following are examples of manufacturer changes that do not alter the essential nature of the firearm: name or designation of the firearm; the

*See also State v. Warriner,* 322 *N.J.Super.* 401, 406–08, 731 *A.*2d 86 (App.Div.1999)(holding that "M1 carbine type" is not unconstitutionally vague either on its face or as applied to a defendant charged with unlawful possession of a "Universal M1 Autoloading Carbine").

We conclude essentially for the reasons set forth in the District Court's opinion in *Coalition of New Jersey Sportsmen* that the inclusion in the definition of "assault firearm" of firearms that are "substantially identical" to the firearms and types of firearms specifically enumerated in *N.J.S.A.* 2C:39–1w(1) is not unconstitutionally vague as applied to the enhanced sentencing mandated by *N.J.S.A.* 2C:43–6g. There is no issue in this case concerning fair notice of what conduct is forbidden, because defendant's possession of the Norinco with the intention of using it to terrorize his former girlfriend would be unlawful, regardless of how the firearm used in the offense was classified. Moreover, the definition of "assault firearm" is sufficiently clear, especially in light of the Attorney General's guidelines, to prevent arbitrary and discriminatory application of the mandatory period of parole ineligibility.

### III

Defendant also argues that the assault firearms statute is unconstitutional because there is no rational basis for requiring

---

color of the firearm; the material used to make the barrel or stock of the firearm; the material used to make a pistol grip; a modification of a pistol grip. This is not an exclusive list.

A semi-automatic firearm should be considered to be "substantially identical," that is, identical in all material respects, to a named assault weapon if it meets the below listed criteria:

A. semi-automatic rifle that has the ability to accept a detachable magazine and has at least 2 of the following:

1. a folding or telescoping stock;

2. a pistol grip that protrudes conspicuously beneath the action of the weapon;

3. a bayonet mount;

4. a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and

5. a grenade launcher.

imposition of the same enhanced sentence for an offense committed with an assault rifle as an offense committed with a machine gun. This argument is clearly without merit and does not require discussion. *R.* 2:11–3(e)(2). Assuming that a machine gun is more dangerous than an assault firearm, it still was within the Legislature's province to conclude that the same enhanced sentence should be mandated for an offense committed with either type of firearm.

## IV

▉ Defendant argues, relying primarily upon *State v. Johnson,* 166 *N.J.* 523, 766 *A.*2d 1126 (2001) and *State v. Stanton,* 339 *N.J.Super.* 1, 770 *A.*2d 1198 (App.Div.2001), that his sentence for possession of an assault rifle for the purpose of using it unlawfully against the person of another was unconstitutionally imposed, because he was entitled to have a jury find whether his purpose in possessing the firearm was to use it against the person of another and whether the firearm was "substantially identical" to one of the thirty-six firearms enumerated in *N.J.S.A.* 2C:39–1w(1), and that those findings had to be made beyond a reasonable doubt.

The trial court's determination that defendant's purpose in possessing the firearm was to use it against the person of another was a purely legal conclusion based on defendant's own version of the offense given at the plea hearing. Consequently, as in *State v. Reardon,* 337 *N.J.Super.* 324, 329, 766 *A.*2d 1203 (App.Div.2001), "there was no need for [an evidentiary] hearing . . . and the court was not required to make any findings of fact beyond accepting the statements made by defendant as the factual basis for his plea" in order to conclude that this factual predicate of an enhanced sentence was established. *See also State v. Camacho,* 153 *N.J.* 54, 72, 707 *A.*2d 455, *cert. denied,* 525 *U.S.* 864, 119 *S.Ct.* 153, 142 *L.Ed.*2d 125 (1998).

On the other hand, defendant did not stipulate or provide a factual foundation at the plea hearing for the trial court's finding that the firearm he possessed was an assault firearm. Thus, the

determination of that issue required an evidentiary hearing at which evidence was presented concerning the similarities and differences between the rifle possessed by defendant and Russian-made Avtomat Kalashnikov rifles, and the trial court found based on that evidence that the rifle possessed by defendant was "substantially identical" to "Avtomat Kalashnikov type semi-automatic firearms."

In *Johnson,* the Court held that a factual finding as to whether an offense constitutes a "violent offense," for which the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, requires imposition of a mandatory minimum prison term of 85% of the overall sentence, must be made by a jury, and that the jury's finding must be made beyond a reasonable doubt. NERA does not expressly state whether a finding concerning a factual predicate for a NERA sentence should be made by the court or a jury, nor does it set forth the standard of proof that governs such a finding. 166 *N.J.* at 539–40, 766 *A.*2d 1126. However, to avoid the "fundamental constitutional concerns" which would arise from an interpretation of NERA under which the trial court could find the predicate facts that mandate an enhanced sentence by a preponderance of the evidence, *id.* at 543, 766 *A.*2d 1126, the Court construed NERA to require such findings to be made by a jury beyond a reasonable doubt.

[A] NERA sentence does not impose an increased maximum prison sentence beyond that otherwise available under the Criminal Code. However, "we have always recognized that real time is the realistic and practical measure of the punishment imposed."

. . .

Because of the uncertainty expressed by the U.S. Supreme Court respecting the continuing vitality of *McMillan* [*v. Pennsylvania,* 477 *U.S.* 79, 106 *S.Ct.* 2411, 91 *L.Ed.*2d 67 (1986) ], and the broad understanding of "punishment" recognized by this Court, we will construe subsection (c) of NERA to require that the "violent crime" condition must be submitted to a jury and found beyond a reasonable doubt. To do otherwise would be to subject NERA to constitutional challenge.

[*Id.* at 541, 543–44, 766 *A.*2d 1126 (citations omitted).]

In *Stanton,* we concluded that the rationale of *Johnson* is not limited to NERA, and that under any statute that mandates a period of parole ineligibility based on the existence of a fact other

than the record of a prior conviction, the factual predicate for the sentence must be found by a jury beyond a reasonable doubt:

> In *Apprendi v. New Jersey*, 530 *U.S.* 466, 120 *S.Ct.* 2348, 147 *L.Ed.*2d 435 (2000), the United States Supreme Court held that if a statutorily prescribed sentence or sentencing range for a specific crime is also, by statute, required to be enhanced by the finding of a corollary fact that is not a necessary element of that crime, that fact must be found by the jury beyond a reasonable doubt. That ruling was applied by *State v. Johnson, supra,* 166 *N.J.* 523, 544–45, 766 *A.*2d 1126, to NERA, the New Jersey Supreme Court holding that as a matter of constitutional imperative, "the factual predicate for a NERA sentence must be found by a jury under the 'beyond a reasonable doubt' standard." We understand that a so-called NERA sentence, which requires the defendant to serve eighty-five percent of the base term imposed if he is found to have committed a violent crime as defined by NERA, is not an enhanced sentence in the sense that it exceeds the statutory maximum for the crime itself. But, as *Johnson* explains, a NERA sentence nevertheless does constitute additional punishment because of its imposition of increased real time. *State v. Johnson, supra,* 166 *N.J.* at 541–42, 766 *A.*2d 1126. In any event, we are, of course, bound by *Johnson's* reading of *Apprendi,* and as we understand *Johnson,* even though it was directly addressing only NERA, its underlying holding is not subject to doubt. In sum, as we view *Johnson,* it holds that if imposition of a statutorily mandated parole ineligibility term is based on the existence of a fact other than a record of a prior conviction, then, as a matter of the imperatives of the Fifth and Sixth Amendments, that fact must be found by a jury beyond a reasonable doubt.
>
> [339 *N.J.Super.* at 6–7, 770 *A.*2d 1198.]

Accordingly, even though the statutory provision governing vehicular homicide provides that the court shall determine by a preponderance of the evidence whether the defendant was "intoxicated," which finding mandates a three-year period of parole ineligibility, *N.J.S.A.* 2C:11–5b(2), we concluded in *Stanton* that, to preserve the constitutionality of that statute, it must be interpreted to require the finding of intoxication to be made by a jury beyond a reasonable doubt. 339 *N.J.Super.* at 8, 770 *A.*2d 1198.

We reach the same conclusion in this case. Similar to NERA, the assault firearms statute mandates the imposition of a period of parole ineligibility that inevitably will result in a defendant serving greater real time than otherwise could be imposed. Possession of a weapon for an unlawful purpose is a second degree offense, *N.J.S.A.* 2C:39–4a, for which the sentencing range is five to ten years, *N.J.S.A.* 2C:43–6a(2), with a five year maximum period of parole ineligibility, *N.J.S.A.* 2C:43–6b. Because defendant is a

first offender, he probably would have been sentenced to no longer than a seven year term of imprisonment, with three years of parole ineligibility,[3] were it not for the court's finding that the offense was committed with an "assault rifle." As a result, the factual finding that the weapon was an "assault rifle" resulted in the imposition of substantial additional real time upon defendant. Therefore, we conclude that, as in *Johnson* and *Stanton*, defendant was entitled to have this finding made by a jury under the beyond a reasonable doubt standard of proof.

Finally, we must determine what disposition is appropriate in light of this conclusion. We have previously indicated that in some circumstances, the appropriate disposition where a trial court has made the predicate factual finding for imposition of an enhanced sentence is a remand for a hearing before a jury under the beyond a reasonable doubt standard of proof. *State v. Parolin*, 339 *N.J.Super.* 10, 19, 770 *A.*2d 1204 (App.Div.2001). However, we have indicated that in other circumstances, such a disposition may be inconsistent with the parties' reasonable expectations at the time of the plea, and accordingly, the parties must be given the option of vacating the plea bargain and either reinstating the indictment or renegotiating a new plea bargain. *See State v. Shoats*, 339 *N.J.Super.* 359, 370, 772 *A.*2d 1 (App.Div.2001). We conclude that this is such a case, because a hearing before a jury concerning the nature of the firearm possessed by defendant could not have been "within the contemplation of either the prosecutor or defendant at the time of the plea bargain." *Ibid.* We also cannot ignore the circumstance that more than five years have elapsed since defendant's guilty plea.

Accordingly, we vacate the judgment of conviction and plea, reinstate the indictment, and remand the case to the trial court for further proceedings in conformity with this opinion.

---

[3] Seven years is the "presumptive term" for a second degree offense. *N.J.S.A.* 2C:44–1f(1)(c). Because defendant possessed a firearm with the purpose of using it against the person of another, he was subject to a mandatory three year period of parole ineligibility under the Graves Act. *N.J.S.A.* 2C:43–7.2c.