# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3908-24

STATE OF NEW JERSEY,

Plaintiff-Appellant,

v.

DOMINIC A. LLOYD,

Defendant-Respondent.

---

Submitted April 21, 2026 – Decided May 14, 2026

Before Judges Gooden Brown and Rosero.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 23-12-0866.

Andrew B. Johns, Gloucester County Prosecutor, attorney (Jonathan Gilmore, Assistant Prosecutor, on the brief).

Stephen J. Buividas, attorney for respondent.

PER CURIAM

The State appeals from the August 4, 2025 Law Division order admitting

defendant Dominic Lloyd into the Pretrial Intervention Program (PTI) over the prosecutor's objection. Based on our review of the record, we reverse the trial judge's order and remand for further proceedings.

I.

Defendant was charged in a three-count Gloucester County indictment with second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b)(1) and 2C:58-4; second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b). The charges stemmed from a verbal altercation that escalated into a fistfight between defendant and Antonio Dickerson after a basketball game at a gymnasium in Turnersville at about 4:30 p.m. on October 23, 2022.

Video surveillance captured defendant striking Dickerson in the face after the verbal altercation. Dickerson left the basketball court for a short time, allegedly telling defendant, "I'll be right back, I'm going to kill you[,] MF'er." When Dickerson returned, defendant took a firearm out of his gym bag, "racked" it openly, and handed it to a friend. Defendant was licensed to carry a firearm in Pennsylvania but not in New Jersey. After the fight, defendant retrieved the firearm and left the gymnasium before the police arrived. After speaking with eyewitnesses and Dickerson, the police identified defendant and issued a

warrant for his arrest.

Pursuant to Rule 3:28-3(b)(1), governing PTI applications requiring prosecutor's consent "based on the nature of the crime charged," defendant sought admission to the PTI program. In support, defendant submitted letters from his pastor, supervisor, and childhood friend attesting to his character and asserting he was a "respected" member of a "church community," an "exemplary employee," and "a mentor for troubled youth."

In a supporting brief, defendant also argued he met the criteria to overcome the presumption against admission into the PTI program under the Attorney General's 2014 Graves Act Directive because he "ha[d] no prior involvement with the criminal justice system, . . . lawfully acquired and possessed the firearm in a different state[,] and . . . [his] presence in New Jersey was incident to lawful travel." See Off. of the Att'y Gen., Clarification of 'Graves Act' 2008 Directive with Respect to Offenses Committed by Out-of-State Visitors From States Where Their Gun-Possession Conduct Would Have Been Lawful 5 (Sept. 24, 2014) [hereinafter 2014 Directive] (clarifying prosecutors should not "'categorically' . . . deny a defendant's PTI application" but should "consider all of the relevant factors" to "determine whether [there are] compelling case-specific reasons [to] overcome the presumption against

admission" for persons charged with a Graves Act offense, N.J.S.A. 2C:43-6(c)).

The prosecutor declined consent, finding no compelling reasons to overcome the presumption of incarceration for a second-degree offender or avoid the mandatory minimum period of parole ineligibility applicable to a defendant charged with a Graves Act offense. See R. 3:28-1(d) (delineating persons ineligible for PTI without prosecutorial consent). The prosecutor also found the statutory factors enumerated in N.J.S.A. 2C:43-12(e)[1] weighed against

---

[1] N.J.S.A. 2C:43-12(e) provides the following criteria for prosecutors to consider in evaluating a defendant's application for PTI admission:

> (1) The nature of the offense;
> (2) The facts of the case;
> (3) The motivation and age of the defendant;
> (4) The desire of the complainant or victim to forego prosecution;
> (5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;
> (6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his [or her] participation in supervisory treatment;
> (7) The needs and interests of the victim and society;
> (8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

admission. Specifically, the prosecutor found six factors weighed against admission, namely, factors one, two, seven, ten, fourteen, and seventeen, and one factor weighed in favor of admission, factor six. The prosecutor found the remaining ten statutory factors inapplicable.

---

> (9) The applicant's record of criminal and penal violations and the extent to which he [or she] may present a substantial danger to others;
> (10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;
> (11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;
> (12) The history of the use of physical violence toward others;
> (13) Any involvement of the applicant with organized crime;
> (14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;
> (15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his [or her] case through traditional criminal justice system procedures;
> (16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and
> (17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

Defendant appealed the prosecutor's rejection to the Law Division, reiterating the factors previously advanced in mitigation, including the fact that he had no prior criminal record, was employed full-time, and was of good moral character. Defendant also argued the Graves Act was intended to curb gang violence, but defendant was not a gang member. The prosecutor countered defendant publicly racked a handgun and "menace[d]" everyone at the gymnasium. The prosecutor stressed he had considered all the applicable factors to determine whether defendant was "an appropriate candidate for the PTI program," and reiterated there were no "compelling" or "extraordinary circumstances" to deviate from the presumption against admission.

During oral argument conducted on March 14, 2025, when asked by the judge whether the prosecutor had considered the 2014 Directive in his analysis since defendant had a Pennsylvania firearms license, the prosecutor responded the offenses covered by the 2014 Directive were "vastly different from the circumstances of this case." According to the prosecutor, those cases typically involved individuals traveling across state lines who were pulled over while having a firearm licensed in their home state in their vehicle, whereas defendant "indirectly" threatened "the victim and others [present]" with a firearm.

After hearing argument, the judge "remand[ed the] matter back to the

[Gloucester County] Prosecutor's Office [(GCPO)]" to reconsider defendant's application in light of the 2014 Directive which provided special guidance in cases where an individual charged with unlawful gun possession in New Jersey is licensed in another state and is unclear about New Jersey gun possession laws. The judge clarified he was "not saying that the [GCPO] exercised its discretion in a way that was patent and . . . grossly abusive" but was "simply asking [the GCPO] to take another look at it."

On August 4, 2025, the parties returned to court. After reconsideration, the prosecutor again declined to consent to defendant's admission into the PTI program, asserting the 2014 Directive was not applicable. In response to the judge's inquiry, the prosecutor explained the case was distinguishable from the cases for which the GCPO generally offered a diversionary or probationary disposition for Graves Act offenses because of the nature and circumstances of defendant's offenses.

Following oral argument, the judge entered an order compelling defendant's admission into the PTI program over the prosecutor's objection. In an oral decision on the record, the judge explained defendant did not point the gun at anyone, did not use the weapon, was licensed in Pennsylvania, was employed full time, had support in his community, and was "exercising a

constitutional right," albeit "improperly."

The judge elaborated:

> I recognize that the Appellate Division recently in an unreported decision found that the Full Faith and Credit Clause does not apply to an out-of-state permit holder coming into this [S]tate and carrying.
>
> Now, interestingly, the right to bear arms is an enumerated right in the Bill of Rights. There's no right in the Bill of Rights to get married. But when an interracial couple got married in New York . . . and moved to Virginia, the State of Virginia had the right at the time to deny the fact that those people were legally married.
>
> And in Loving v. Virginia,[2] the Supreme Court found an unenumerated right, because there's no right to marry in the constitution, it's not there in the text, but we all know it's a right, it's a fundamental right. . . .
>
> Loving v. Virginia found the Full Faith and Credit Clause had to apply to an out-of-state marriage license even where that marriage would be illegal in the State of Virginia at the time. Luckily, all those codes have been repealed, in large part due to the Civil Rights Act championed by John F. Kennedy, but an enumerated right specifically in the second amendment, which in a post[-]Bruen[3] era establishes the fact that it applies to all [fifty] states, notwithstanding the Byzantine nature of our regulations.

---

2 Loving v. Virginia, 388 U.S. 1 (1967).

3 N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 8-11 (2022) (holding a New York law requiring applicants to show a "special need" for a gun-carry permit is unconstitutional under the Second and Fourteenth Amendments).

> And if the [S]econd [A]mendment now applies in all [fifty] states and if we think about reading Federalist 46 and perhaps the Militia Act of 1792, which required all men between the ages of [eighteen] and [forty-five] to have a military style rifle at their own expense and sufficient shot and powder, so if that [A]ct was passed today we would all be expected to own an AR-15 and be prepared in the event we were called to go to war, to repel invasion, to keep the peace, whatever the reason was.
>
> . . . .
>
> I just think this . . . case should have been a plea . . . either into PTI or into probation, and that hasn't been offered. So as a result[,] I'm going to go ahead and order that . . . defendant be placed into the PTI program.

This appeal followed.

On appeal, the State raises the following points for our consideration:

> POINT 1
>
> THERE IS NO ABUSE OF DISCRETION, THERE IS NO BASIS TO OVERTURN THE PROSECUTOR'S REJECTION OF . . . DEFENDANT'S PTI APPLICATION.
>
> POINT 2
>
> AT NO TIME WERE THERE FINDINGS THAT SUPPORTED OVERCOMING THE PRESUMPTION OF INCARCERATION AND WAIVER OF THE GRAVES [ACT] STATUTORY MINIMUMS.

POINT 3

THE TRIAL COURT WAS ENGAGING IN INAPPROPRIATE PLEA BARGAINING AND GRANTED DEFENDANT'S APPEAL OF HIS PTI REJECTION WITHOUT MAKING APPROPRIATE FINDINGS UNDER [N.J.S.A.] 2C:43-12 OR [N.J.S.A.] 2C:43-6.2.

## II.

First, we address our standard of review.

> "Issues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law[.]'" State v. Maddocks, 80 N.J. 98, 104 (1979). "Consequently, on such matters[,] an appellate court is free to substitute its independent judgment for that of the trial court or the prosecutor should it deem either to have been in error." Id. at 105.
>
> While we exercise de novo review over the propriety of considering a certain PTI factor, we afford prosecutors "broad discretion to determine if a defendant should be diverted." State v. K.S., 220 N.J. 190, 199 (2015).
>
> [State v. Denman, 449 N.J. Super. 369, 375-76 (App. Div. 2017) (first and second alterations in original) (citations reformatted).]

Indeed, deciding whether to permit a defendant to divert to PTI "is a quintessentially prosecutorial function," State v. Wallace, 146 N.J. 576, 582 (1996), for which a prosecutor is "granted broad discretion," K.S., 220 N.J. at 199. It involves the consideration of the non-exhaustive list of seventeen

statutory factors enumerated in N.J.S.A. 2C:43-12(e), in order to "make an individualized assessment of the defendant considering his or her 'amenability to correction and potential responsiveness to rehabilitation.'" State v. Roseman, 221 N.J. 611, 621-22 (2015) (quoting State v. Watkins, 193 N.J. 507, 520 (2008)) (internal quotation marks omitted).

Under Rule 3:28-4, in addition to considering the seventeen individual factors listed in N.J.S.A. 2C:43-12(e), "[t]he nature of the offense should be considered in reviewing the application," and "[i]f the crime was . . . deliberately committed with violence or threat of violence against another person[,] . . . the defendant's application should generally be rejected." R. 3:28-4(b)(1); see R. 3:28-4(a). Further, in accordance with Rule 3:28-1(d)(1), "[a] person who is charged with a crime, or crimes, for which there is a presumption of incarceration or a mandatory minimum period of parole ineligibility"[4] is ineligible for PTI without prosecutorial consent. Such an application "shall include a statement of the extraordinary and compelling circumstances that justify consideration of the application notwithstanding the presumption of

[4] Under the Graves Act, certain gun crimes carry a mandatory minimum term of imprisonment and parole ineligibility, including unlawful possession of a firearm, N.J.S.A. 2C:39-5(b), and possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

ineligibility." R. 3:28-3(b)(1). A defendant charged with a first- or second-degree crime must also enter a guilty plea to be considered for PTI admission. R. 3:28-5(b)(2); N.J.S.A. 2C:43-12(g)(3).

Under this statutory- and rule-based framework, the scope of our review of a prosecutor's PTI rejection is severely limited and designed to address "only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis, 73 N.J. 360, 392 (1977)). Thus, "[i]n order to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion,'" meaning that the decision "has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." Watkins, 193 N.J. at 520 (first quoting State v. Watkins, 390 N.J. Super. 302, 305-06 (App. Div. 2007), aff'd, 193 N.J. 507 (2008); then quoting Wallace, 146 N.J. at 582-83).

An abuse of discretion occurs where clear and convincing evidence establishes "the [PTI] denial '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting State v. Bender, 80

N.J. 84, 93 (1979)). "In contrast, the 'patent and gross abuse of discretion standard' is 'more than just an abuse of discretion as traditionally conceived,'" and "has been categorized as 'enhanced deference' or 'extra deference.'" State v. Taylor, 261 N.J. 440, 450 (2025) (first quoting State in re V.A., 212 N.J. 1, 23 (2012); then quoting State v. Nwobu, 139 N.J. 236, 246 (1995)). "Indeed, '[i]n order for . . . an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI].'" Ibid. (first alteration and omission in original) (quoting Bender, 80 N.J. at 93).[5] "The extreme deference which a prosecutor's decision is entitled to in this context translates into a heavy burden which must be borne by a defendant when seeking to overcome a prosecutorial veto of his [or her] admission into PTI." State v. Kraft, 265 N.J. Super. 106, 112 (App. Div. 1993).

"In addition to this extremely deferential standard of review, it is also well settled that a court's scrutiny of a prosecutor's denial of consent is normally limited to the reasons given by the prosecutor for his action." Ibid.

---

[5] When a defendant has not met the "patent and gross abuse" of discretion standard, "but nonetheless has demonstrated an abuse of discretion, a remand [to the prosecutor] is appropriate" for further consideration. Denman, 449 N.J. Super. at 377.

"Furthermore, '[a]bsent evidence to the contrary, it is [to be] presumed that the prosecutor considered all relevant factors before rendering a decision.'" Ibid. (alterations in original) (quoting State v. Dalglish, 86 N.J. 503, 509 (1981)). "A trial court does not evaluate a PTI application 'as if it [stands] in the shoes of the prosecutor.'" State v. Hoffman, 399 N.J. Super. 207, 216 (App. Div. 2008) (alteration in original) (quoting Wallace, 146 N.J. at 589). This is "because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and . . . because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." Kraft, 265 N.J. Super. at 111.

> Against this backdrop, it is quite clear that "a trial [court] does not have the authority in PTI matters to substitute [its own] discretion for that of the prosecutor." State v. Von Smith, 177 N.J. Super. 203, 208 (App. Div. 1980). This remains so even where the prosecutor's decision is one which the trial court disagrees with or finds to be harsh. See State v. DeMarco, [107 N.J. 562, 566-67 (1987).]
>
> [Kraft, 265 N.J. Super. at 112-13 (first and second alternations in original).]

Here, the judge clearly failed to abide by these settled principles. Instead of extending deference to the prosecutor's decision, the judge substituted his own judgment for that of the prosecutor and "performed what was, in essence, a de novo review of defendant's application." Id. at 113 (italicization omitted).

Pointedly, the judge said, "I just think this . . . case should have been a plea . . . either into PTI or into probation, and that hasn't been offered. So[,] as a result[,] I'm going to go ahead and order . . . defendant be placed into the PTI program." The judge merely disagreed with the prosecutor's decision and reasons for declining to consent to defendant's admission into PTI, without making a determination that no reasonable prosecutor could have reached a similar conclusion in weighing the factors. A thorough review of the record shows the prosecutor considered, weighed, and balanced all the requisite factors, including those personal to defendant, along with the facts and circumstances of the offenses. There is no evidence the prosecutor considered irrelevant or inappropriate factors. Thus, we are satisfied the prosecutor's determination does not amount to a gross or patent abuse of discretion.

In rendering his decision, among other things, the judge relied on the 2014 Directive addressing the prosecution of cases where "a resident of another state brings into New Jersey a firearm that had been acquired lawfully[,] and that could be carried lawfully by that visitor in the visitor's home jurisdiction," but was unlawful in New Jersey. 2014 Directive, at 1. The 2014 Directive "advises prosecutors to avoid incarceration of certain out-of-state defendants either by

consenting to PTI, or by tendering a plea offer of a non-custodial probationary sentence." State v. Waters, 439 N.J. Super. 215, 239 (App. Div. 2015).

"The [2014 Directive] applies only where the out-of-state defendant 'produces proof that: 1) the firearm had been lawfully acquired in another jurisdiction, 2) defendant's possession would have been lawful in his or her home jurisdiction, and 3) defendant was under the misimpression that such possession was lawful in New Jersey.'" Ibid. (quoting 2014 Directive, at 4). "[I]n other words, [the 2014 Directive] . . . applies only to cases involving the 'simple' unlawful possession of a firearm, and not to cases that would have been subject to the Graves Act before the statute was expanded in 2008." 2014 Directive, at 4.[6]

If applicable, the 2014 Directive counsels prosecutors to consider "special facts and circumstances" in exercising discretion on whether to admit a defendant into PTI, specifically: (1) whether there was minimal exposure of the firearm to persons in New Jersey; (2) whether the gun-possession offense was isolated and aberrational, considering other offenses committed during the possession offense; (3) whether the individual volunteered the presence of the

---

[6] Prior to 2008, the Graves Act included "convict[ions] under [N.J.S.A.] 2C:39-4[(a)] of possession of a firearm with intent to use it against the person of another." N.J.S.A. 2C:43-6(c) (1993) (amended 2008).

firearm to police; (4) whether the individual surrendered the firearm for safekeeping; and (5) whether the individual confused New Jersey's law with another state's law. 2014 Directive, at 5-8. If a prosecutor decides that a defendant is not eligible for PTI, and the defendant falls under the scope of the memorandum, a prosecutor "shall tender an initial plea offer that allows for probation unless the prosecutor determines that relevant aggravating factors outweigh applicable mitigating factors." Id. at 9.

Here, the prosecutor aptly determined the 2014 Directive did not apply based on the nature and circumstances of defendant's offenses.[7] By its plain text, the 2014 Directive is only applicable "to cases involving the 'simple' unlawful possession of a firearm, and not to cases that would have been subject to the Graves Act before the statute was expanded in 2008." 2014 Directive, at 4. We therefore discern no abuse of discretion, much less a patent or gross abuse of discretion in the prosecutor's decision.

In addition to being charged with Graves Act offenses, defendant was charged with second-degree offenses which carry a presumption of incarceration

[7] Even if the 2014 Directive was applicable, the prosecutor considered "special circumstances" identified in the 2014 Directive, including that defendant displayed the firearm in a crowded gymnasium, committed separate offenses at the time of the gun possession charge, and did not surrender the gun to police but left the gymnasium after the incident.

and ineligibility for PTI without the prosecutor's consent. N.J.S.A. 2C:44-1(d); R. 3:28-1(d)(1). To overcome the presumption, "a defendant must demonstrate something extraordinary or unusual, something 'idiosyncratic,' in his or her background." Nwobu, 139 N.J. at 252 (quoting State v. Jabbour, 118 N.J. 1, 7 (1990)). Defendant presented no such evidence. Although defendant had been a law-abiding citizen, was gainfully employed, and had solid community support, these characteristics are not so unique to overcome the presumption of ineligibility for PTI. See ibid. (explaining to find "extraordinary" or "unusual" circumstances, "there must be a showing greater than that the accused is a first-time offender and has admitted or accepted responsibility for the crime"); see also State v. Warriner, 322 N.J. Super. 401, 409-10 (App. Div. 2002) (upholding PTI denial even though the defendant had no prior convictions, was gainfully employed, and had two children).

Defendant failed to clearly and convincingly establish the prosecutor's decision went so wide of the mark sought to be accomplished by PTI, fundamental fairness, and justice that judicial intervention was required. Judicial disagreement with a prosecutor's reasons for rejection, as occurred here, does not equate to patent and gross abuse of discretion to merit a judicial override. Accordingly, we reverse the order admitting defendant into PTI over

the prosecutor's objection. Based on our decision, we need not address the State's remaining arguments.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division