277 N.J. Super. 548 (1994)
649 A.2d 1351
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL ELROSE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 1994.
Decided December 6, 1994.
*550 Before Judges STERN and KEEFE.
Needleman & Schocket, attorneys for appellant (Gary J. Needleman on the brief and reply letter brief).
*551 Robert W. Gluck, Middlesex County Prosecutor, attorney for respondent (Simon Louis Rosenbach, Assistant Prosecutor, of counsel and on the letter brief).
PER CURIAM.
Defendant was convicted at a bench trial of unlawful possession of assault firearms  an Uzi (count one), an AR 15 rifle (count two) and a MAC 10 pistol (count three), all in violation of N.J.S.A. 2C:39-5f.[1] He was also convicted of unlawful possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3j (count five).[2] The offenses were alleged to have occurred in September 1991. Although not contested on this appeal, the trial judge merged counts one, two and three, and sentenced defendant to probation for three years conditioned on the performance of fifty hours of community service. A concurrent eighteen month probationary term was imposed on count five. The weapons were also forfeited.
On this appeal defendant argues:
POINT I THE COURT ERRED IN ADJUDICATING THE DEFENDANT GUILTY OF COUNTS 1, 2 AND 3 OF THE INDICTMENT WHERE NO VIOLATION OF N.J.S.A. 2C:39-5f EXISTED OR WAS PROVEN.
POINT II THE COURT ERRED IN FINDING THE DEFENDANT GUILTY OF COUNTS 1, 2, AND 3 OF THE INDICTMENT WHERE IT RULED THAT THE FAILURE TO FILE CERTIFICATES OF INOPERABILITY CONSTITUTED A VIOLATION OF N.J.S.A. 2C:39-5f.
POINT III THE COURT ERRED IN RULING THAT AN ASSAULT FIREARM NEED NOT BE OPERABLE IN ORDER TO SUPPORT A CONVICTION UNDER N.J.S.A. 2C:39-5f.
POINT IV THE COURT ERRED IN ITS RULING THAT THE DEFENDANT WAS GUILTY OF POSSESSION OF LARGE CAPACITY MAGAZINE(S) IN VIOLATION OF N.J.S.A. 2C:39-3j WHERE THE STATE FAILED TO ADDRESS OR PROVE ALL ELEMENTS NECESSARY TO CONVICT.

*552 POINT V THE COURT ERRED IN RENDERING VERDICTS OF GUILTY AS TO ALL COUNTS OF THE INDICTMENT WHERE THE STATE FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE DEFENDANT INTENDED TO VIOLATE N.J.S.A. 2C:39-3j and 2C:39-5f.
We affirm the conviction, and find only the need to discuss the following contentions of defendant. R. 2:11-3(e)(2).
Because the judge merged the first three counts, which were all violations of N.J.S.A. 2C:39-5f, if any one of the convictions is sustainable, the merged conviction must stand. However, the parties do not make an argument uniquely addressed to any one particular weapon, nor do they distinguish between the specific weapons embodied in those counts.
It was stipulated at the bench trial that the weapons referred to in counts one, two and three were "assault firearms" as defined in N.J.S.A. 2C:39-1w; "that they were found in defendant's house on the date of this incident, which was September 12 of 1991, that on that date they were owned by the defendant," and that all three guns were "inoperable at the time."[3] Moreover, defendant, a firearms collector, testified without contest that the Piscataway Police had the weapons in their possession between October 31, 1990, and April 1, 1991, and that he "disabled" them by "destroy[ing them]," and "got rid of" the magazines a "few weeks after [he] got the guns back." There is no contest that this occurred before the end of May 1991. On the other hand, it was clearly established by the evidence that defendant possessed inoperable assault firearms more than a year after the May 30, 1990, effective date of N.J.S.A. 2C:39-5f.
There was a dispute as to defendant's efforts to comply with the ban on assault firearms which defendant admitted being aware of before he rendered the firearms inoperable. Detective Michael Razzano, the Identification and Property Officer of the Piscataway Police, explained that he received information and forms regarding the assault firearms legislation commencing around August 1990. *553 He recalled speaking to defendant about getting his guns back from the Police Department after prior charges against defendant were dismissed, apparently referring to the April 1991 return of the weapons. However, Razzano testified that he never spoke with defendant regarding a certificate of inoperability. Razzano further testified that defendant never "filled out" or filed such a certificate.
To the contrary, defendant testified that he called Detective Razzano "a day before the law went into effect on May 30th," 1991, and asked whether weapons which "were not fireable" had to be "registered." Defendant testified that Razzano told him that he "wasn't sure what has to be done and he's not going, the police department is not going to be concerned about it right now." Defendant further testified that he thought he "complied with the law." Defendant's wife remembered that such a call was made.
Defendant also testified that he "follow[ed] up" on the matter by calling, at the end of May 1991, a friend who was a captain in the Hudson County Prosecutor's office. The friend, a chemist in charge of the CDS forensic laboratory of that office, was called in rebuttal by the State. The chemist acknowledged serving with defendant as a volunteer fireman, but stated that he remembered no conversation about assault firearms, knew nothing about the law on the subject and would have so told defendant if there was such a conversation.
With respect to the fifth count of the indictment, Investigator Ciro Sinagra of the Middlesex County Prosecutor's office, acknowledged as an expert in the area of firearms, identified four exhibits relating to the relevant weapons as "magazines that hold ammo in excess of fifteen rounds." With respect to one magazine, he "filled it to capacity with twenty rounds," and found that "[t]he magazine held twenty rounds." He further testified that the magazines "would work" if placed into an appropriate firearm.
Defendant's acknowledged firearms expert, Robert MacKinnon, testified that he inspected the magazine for the Uzi, and that it would hold only thirteen rounds of ammunition. He was able to *554 put twenty rounds in the other three magazines, but none of the magazines were test-fired, and without test-firing it could not be established if the magazines would function in the manner in which they are designed.

I.
Defendant insists that he rendered his assault firearms inoperable within one year of the effective date of N.J.S.A. 2C:58-13, and that by doing so, he could not be convicted of possession of an assault weapon under N.J.S.A. 2C:39-5f.
By L. 1990, c. 32, § 12, the Legislature adopted N.J.S.A. 2C:39-5f, effective May 30, 1990, to prohibit the possession of "assault firearms." It provides that:
Any person who knowingly has in his possession an assault firearm is guilty of a crime of the third degree except if the assault firearm is licensed pursuant to N.J.S. 2C:58-5; registered pursuant to section 11 of P.L. 1990, c. 32 (C. 2C:58-12) or rendered inoperable pursuant to section 12 of P.L. 1990, c. 32 (C. 2C:58-13).

[N.J.S.A. 2C:39-5f (emphasis added).]
There is no claim that defendant's weapons were licensed or registered, or that the State's proofs failed to prove the contrary.
N.J.S.A. 2C:58-13, also adopted by L. 1990, c. 32, § 12, effective May 30, 1990, provides that:
[a]ny person who legally owns an assault firearm on the effective date of this act and who is unable to register or chooses not to register the firearm [pursuant to N.J.S.A. 2C:58-12] may retain possession of that firearm for a period not to exceed one year from the effective date of this act.
[N.J.S.A. 2C:58-13a.]
The section further provides that "[d]uring this period the owner of the assault firearm shall either: (1) [t]ransfer the assault firearm to any person or firm lawfully entitled to own or possess such firearm; (2) [r]ender the assault firearm inoperable; or (3) [v]oluntarily surrender the assault firearm pursuant to the provisions of N.J.S. 2C:39-12." N.J.S.A. 58-13a. N.J.S.A. 2C:58-13c defines inoperability, and provides:
As used in the section, "inoperable" means that the firearm is altered in such a manner that it cannot be immediately fired and that the owner or possessor of the *555 firearm does not possess or have control over the parts necessary to make the firearm inoperable.
Defendant, in essence, asserts that by satisfying the definitional section of N.J.S.A. 2C:58-13c, he satisfied the exception within N.J.S.A. 2C:39-5f by rendering the firearm inoperable. However, N.J.S.A. 2C:58-13b specifically provides:
If the owner of an assault firearm elects to render the firearm inoperable, the owner shall file a certificate on a form prescribed by the Superintendent of the State Police indicating the date on which the firearm was rendered inoperable. This certification shall be filed with either the chief law enforcement officer of the municipality in which the owner resides [or as provided for non-residents].
There is no question here that the firearms in question were rendered "inoperable" within the meaning of N.J.S.A. 2C:58-13c, and there can be no dispute with defendant's assertion that "he has totally complied with the requirements of N.J.S.A. 2C:58-13c." However, the critical question before the trial judge, and before us, is whether the defendant had to file a certificate of inoperability required by N.J.S.A. 2C:58-13b, and if that certificate had to be filed within the one year grace period, in order to obtain the benefit of the exception for inoperability within the meaning of N.J.S.A. 2C:39-5f.
We are satisfied that, in order to obtain the benefit of the "inoperability" exception of N.J.S.A. 2C:39-5f, defendant had to file a certificate of inoperability within the one-year grace period. We recognize that penal statutes must be strictly construed. See State v. Vasquez, 129 N.J. 189, 200, 609 A.2d 29 (1992). See also State v. Churchdale Leasing, Inc., 115 N.J. 83, 102, 557 A.2d 277 (1989) (noting that such principles of statutory construction should not be relied upon when there is "a clear message from the Legislature"). We likewise recognize that penal statutes cannot be "so vague as that a person of ordinary intelligence is unable to discern what it requires, prohibits, or punishes." Brown v. Newark, 113 N.J. 565, 572-3, 552 A.2d 125 (1989). See also State v. Afanador, 134 N.J. 162, 177, 631 A.2d 946 (1993) (rejecting defendant's challenge to the drug kingpin statute as "vague" because he did not "show that the kingpin statute did not clearly *556 prohibit his alleged conduct"). Nevertheless, legislation must be read to advance a clear legislative intent and must be implemented to forward that purpose when clear. See, e.g., G.E. Solid State v. Director, Taxation Div., 132 N.J. 298, 308, 625 A.2d 468 (1993); State v. Tischio, 107 N.J. 504, 511, 527 A.2d 388 (1987). Moreover, legislative intent can be gleaned by reading statutes in pari materia, and by reviewing related sections as a whole. See, e.g., Nero v. Hyland, 76 N.J. 213, 221, 386 A.2d 846 (1978).
Based on a reading of the statute as a whole, we are satisfied that N.J.S.A. 2C:58-13 is neither vague nor unclear with respect to its meaning. The Legislature clearly gave owners of assault firearms a year not only in which to transfer, register or render inoperable their assault firearms, but also to complete the application, reporting or filing process. Were it otherwise, the possession of assault firearms and ability of law enforcement officials to be assured of the number and secure possession of assault firearms could have been prolonged indefinitely.
This interpretation is evidenced by the reference in N.J.S.A. 2C:39-5f to the required adherence to the licensing and registration provisions within N.J.S.A. 2C:58-5 and -12 respectively, as well as the reference in N.J.S.A. 2C:39-5f to the need to render a firearm "inoperable pursuant to section 12 of P.L. 1990, c. 32 (C. 2C:58-13)." N.J.S.A. 2C:39-5f (emphasis added). The Legislature did not provide, as defendant in essence suggests, that the exception in N.J.S.A. 2C:39-5f was perfected by rendering a firearm inoperable pursuant to only one of the subsections of N.J.S.A. 2C:58-13, or pursuant to definitional provision of N.J.S.A. 2C:58-13c. N.J.S.A. 2C:39-5f makes no exception for merely rendering assault firearms "inoperable pursuant to N.J.S.A. 2C:58-13c," and no principles of statutory construction can be relied upon to so limit the legislative intent. We therefore conclude that the certification of inoperability had to be filed within the year to gain the benefit of the exception within N.J.S.A. *557 2C:39-5f.[4]
Moreover, we reject defendant's contention that the State had to prove operability of the assault firearms. The prohibited act was possession of an assault firearm which was not licensed, registered or rendered inoperable as required by law. Possession of an inoperable assault firearm after May 31, 1991, is illegal if the certificate of inoperability was not filed as required by N.J.S.A. 2C:58-13b. To the extent defendant contends there is an inconsistency between this construction of the act and the general definition of "firearm" embodied in N.J.S.A. 2C:39-1f, there can be little doubt that the 1990 legislation regarding assault firearms controls the interpretation of the specific provisions of chapter 39 embodied in that legislation regarding assault weapons. The prohibited assault weapons, therefore, did not have to be operable. Cf. State v. Gantt, 101 N.J. 573, 584-90, 503 A.2d 849 (1986) (firearm need not be "operable" for purposes of the Graves Act). See also N.J.S.A. 2C:39-1w.
The proofs were sufficient to justify the trial judge's findings and conclusions that defendant violated the statute. The proofs were clear that the forms existed by the end of the grace period, that Detective Razzano processed some forms involving other assault firearms within the one-year period and that, in any event, defendant possessed the assault weapons after the grace period expired without having filed a certificate of inoperability.
Defendant, however, contends that he cannot be convicted because his efforts to obtain the forms and comply with the law were unsuccessful, that, in any event, N.J.S.A. 2C:58-13b does not require the filing of a certificate within the one-year period and *558 "that there exists no bar to his filing a certification of inoperability after the one (1) year grace period contained within N.J.S.A. 2C:58-13a for the rendering of the firearm inoperable."
We reject defendant's contentions under the proofs of this case. Moreover, defendant did not suggest or come forward with proofs that he ever filed a certificate, or endeavored to do so at any time; in fact he admitted not having done so. The proofs were uncontested that the assault weapons, even if rendered inoperable in fact, were knowingly possessed by defendant. The possession was illegal by virtue of defendant's failure to file a certificate as required by N.J.S.A. 2C:58-13b.[5]
Defendant's contention that he was ignorant of the law, or that his failure to comply with it is excusable, cannot be sustained. He does not rely on or cite N.J.S.A. 2C:2-4, which provides that a mistake of law can negate culpability. Here, the required culpability was the knowing possession of a prohibited weapon, not the knowing failure to file a certificate. See N.J.S.A. 2C:39-5f. See also N.J.S.A. 2C:2-2b(2); 2-2c. In any event, N.J.S.A. 2C:2-4(c) provides that such a defense must be proved by defendant "by clear and convincing evidence," and while defendant claims he had some difficulty obtaining the forms, defendant acknowledged awareness of the new law within the one-year grace period, and never testified that he received or relied upon advice that he could, therefore, eternally continue to possess the prohibited weapons without ever endeavoring to comply with the filing requirement. In any event, to the extent defendant raised a defense of ignorance or mistake, it is clear that the judge rejected it and that the record supports his conclusion.

*559 II.
With respect to the fifth count, the trial judge found, irrespective of the proofs concerning the Uzi, that the evidence established beyond a reasonable doubt that at least three of the magazines contained more than fifteen rounds, even if all of them did not. See N.J.S.A. 2C:39-1y (defining "large capacity ammunition magazine"). The trial judge also concluded that, even though the State's expert did not test-fire the magazines, there were sufficient inferences based on his testimony that they were operable, assuming that proof of operability was required. The record fully justifies those findings. See State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).
The judgment is affirmed.
NOTES
[1] The indictment and judgment refer to N.J.S.A. 2C:39-3f, but the proceedings and briefs were directed to N.J.S.A. 2C:39-5f.
[2] Count five was renumbered count four as counts four (unlawful possession) and six (prohibited devices) were dismissed during trial.
[3] No issue is raised as to the manner in which the police obtained the firearms.
[4] The fact that N.J.S.A. 2C:58-14 requires annual reports from the Attorney General does not mean that reports regarding inoperability were contemplated for years after the first annual report. The first report was required only 180 days after enactment, before the grace period expired, and the annual reports refer to other subjects, including assault firearm offenses. Further, the prosecutor suggests that people may elect to render firearms inoperable if they lawfully come into possession of assault weapons only after the grace period expires.
[5] We read the trial judge's opinion to reject defendant's claim that he made all reasonable efforts to obtain the certificates, but, assuming its relevancy, if defendant wanted more specific fact-finding in this regard, he should have requested same. See R. 1:7-4. See also State v. Smith, 253 N.J. Super. 145, 147, 601 A.2d 247 (App.Div. 1992).