# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5083-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

P.Z.,

     Defendant-Appellant.

_____

Submitted October 5, 2020 – Decided October 22, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, FO-03-0090-19.

Sendzik & Sendzik, P.C., and Evan F. Nappen, attorneys for appellant (Louis P. Nappen, Janice L. Richter, and Jay C. Sendzik, on the briefs).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant's personal firearms and firearms purchaser identification card (FPIC) were seized pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35.  The State seized these items after his former girlfriend, J.S., obtained a temporary restraining order (TRO) against him.  Although the Family Part denied a final restraining order (FRO), the State filed a motion to forfeit defendant's weapons and FPIC under N.J.S.A. 2C:58-3(c)(5), contending that defendant's possession of these items would be against "the interest of the public health, safety, or welfare."  We affirm the order under review—dated June 3, 2019—which granted the State's petition for forfeiture of the weapons and FPIC.

Defendant and J.S. started dating in 2006.  The couple had one child, who was born in 2010.  They lived together for a brief time prior to defendant's military deployment in 2010, when the child was approximately four months old.  When he returned from Iraq in 2011, defendant did not move back in with J.S.  Rather, they continued seeing each other, but their relationship ended in 2014.

J.S. had residential custody of the child.  At first, defendant and J.S. amicably resolved any issues regarding the child, but over time, the relationship deteriorated.  As part of her TRO application, J.S. alleged that in April 2010,

while the couple lived together, defendant pointed a loaded firearm in her face and said, "[i]f [her ex-husband] comes to my home, this is the last thing he'll see." Defendant denied this incident occurred. The judge noted that J.S.'s testimony at a public safety hearing, held on December 18, 2018, differed from her testimony at the FRO hearing, and he therefore "[found] it difficult to credit her version of the incident[.]"

J.S. also made harassment allegations, claiming that defendant was "tracking" her and the child's movements and was recording their parenting exchanges without her knowledge. She asserted defendant used offensive language, calling her a "bitch." J.S. said defendant threatened not to let her see the child again, to ruin her current-husband's career, and to use his attorneys against her. J.S. also contended that defendant abused animals, had untreated post-traumatic stress disorder (PTSD), and that he had tried to commit suicide during deployment. Defendant denied all allegations, except those involving his PTSD.

These events prompted J.S. to file for the TRO. A Family Part judge in Burlington County first issued the TRO on May 25, 2018, which the judge amended on June 1, 2018. Because of the TRO, the Ocean County Prosecutor's Office (OCPO) seized twenty-seven weapons and an FPIC from defendant's

home. On June 5, 2018, the judge dismissed the TRO and declined to issue an FRO.

On September 6, 2018, the Burlington County Prosecutor's Office (BCPO) served defendant with its notice of intention to obtain title to weapons and "revoke any and all permits, licenses and other authorizations [he] may have to possess th[o]se weapons." On June 3, 2019, the judge granted the State's petition for forfeiture and entered the order under review.

On appeal, defendant argues:

> POINT I
>
> THE ISSUANCE OF A WARRANT FOR THE SEARCH AND SEIZURE OF DEFENDANT'S PROPERTY WAS UNCONSTITUTIONAL AND INVALID.
>
> POINT II
>
> THE [JUDGE] ERRED IN CONSIDERING PTSD AS AN ISSUE WHEN THE STATE'S FORFEITURE PETITION DID NOT INCLUDE N.J.S.A. 2C:58-3[(c)](3) AS A BASIS FOR FORFEITURE[.]
>
> POINT III
>
> THE [JUDGE] ERRED IN TAKING JUDICIAL NOTICE OF THE PSYCHIATRIC REFERENCE TEXT DSM-5 REGARDING PTSD WITHOUT PROVIDING DEFENDANT WITH A COPY OF THE TEXT, NOTICE, OR AN OPPORTUNITY TO RESPOND.

4

POINT IV

THE [JUDGE] ERRED IN FINDING THAT THE CENTURY ARMS RIFLE WAS A PROHIBITED FIREARM[.]

POINT V

THE [JUDGE] ERRED IN CONCLUDING THAT DEFENDANT ADMITTED THAT HE KNEW HIS CENTURY ARMS RIFLE WAS PROHIBITED IN NEW JERSEY[.]

POINT VI

THE [JUDGE] ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS FOR THE STATE'S VIOLATION OF N.J.S.A. 2C:25-21(d)(3).

POINT VII

THE [JUDGE] ERRED IN REQUIRING WRITTEN SUMMATIONS PRIOR TO THE CLOSE OF TESTIMONY[.]

POINT VIII

THE [JUDGE] ERRED IN EXCLUDING EVIDENCE OF THE CUSTODY AND [DCPP] MATTERS PENDING WHEN [J.S.'S] DOMESTIC VIOLENCE COMPLAINT WAS FILED[.]

POINT IX

THE [JUDGE] EXHIBITED BIAS IN FAVOR OF THE STATE[.] (Not Raised Below)[.]

POINT X

IN ARGUENDO TO POINT IV ABOVE, EVEN IF THE ALLEGED FIREARM AT ISSUE IS FOUND TO BE AN "ASSAULT FIREARM," IT IS A VIOLATION OF DEFENDANT'S SECOND AMENDMENT RIGHTS TO BAR HIM FROM FURTHER FIREARM POSSESSION UNDER THESE CIRCUMSTANCES. (Not Raised Below)[.]

Defendant also submitted a reply brief raising the following arguments, which we have renumbered:

POINT XI

DISPUTED ALLEGATIONS ARE NOT FACTS.

POINT XII

THE NEW JERSEY DOMESTIC VIOLENCE PROCEDURES MANUAL SETS FORTH PROCEDURES THAT INCLUDE NOTICE TO THE COUNTY THAT ISSUES A TRO AND SEARCH WARRANT WHEN SERVICE IS MADE IN ANOTHER COUNTY.

I.

We begin our discussion by addressing the search and seizure of defendant's weapons. Defendant asserts that we should vacate the June 3, 2019 order because there was no probable cause demonstrating that the search and seizure were necessary to protect the life and well-being of J.S. We disagree with this assertion.

"Because 'a judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis,' 'an appellate court should accept a trial [judge's] findings of fact that are supported by substantial credible evidence.'" In re Forfeiture of Pers. Weapons and Firearms Identification Card belonging to F.M., 225 N.J. 487, 505 (2016) (internal citation omitted) (first quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004), then quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)). Family Part judges' findings are entitled to deference because "they are judges who have been specially trained" in family matters. J.D. v. M.D.F., 207 N.J. 458, 482 (2011).

Therefore, we "do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Township of North Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). A search executed pursuant to a warrant issued by a judge carries a presumption of validity, State v. Valencia, 93 N.J. 126, 133 (1983), therefore we must accord substantial deference to a trial judge's decision to issue a warrant. State v.

However, questions of law are reviewed de

novo. Gere v. Louis, 209 N.J. 486, 499 (2012). A Family Part judge's legal

determinations are not entitled to any special deference. Ibid.

When a plaintiff files a domestic violence complaint seeking an ex parte

TRO and alleging that the defendant has committed an act of domestic violence,

and "[i]f it appears that the plaintiff is in danger of domestic violence, the judge

shall, upon consideration of the plaintiff's domestic violence complaint, order

emergency ex parte relief, in the nature of a [TRO]. A decision shall be made

by the judge regarding the emergency relief forthwith." N.J.S.A. 2C:25-28(g).

The PDVA further provides:

> Emergency relief may include forbidding the defendant
> from returning to the scene of the domestic violence,
> forbidding the defendant from possessing any firearm
> or other weapon enumerated in subsection r. of
> N.J.S.[A.] 2C:39-1, ordering the search for and seizure
> of any firearm or other weapon at any location where
> the judge has reasonable cause to believe the weapon is
> located and the seizure of any [FPIC] or permit to
> purchase a handgun issued to the defendant and any
> other appropriate relief.
>
> [N.J.S.A. 2C:25-28(j).]

The PDVA allows a judge to issue a TRO "to protect a victim of domestic

violence and to enter an order authorizing . . . police to search for and seize from

the defendant's home, or any other place, weapons that may pose a threat to the

victim." State v. Hemenway, 239 N.J. 111, 116 (2019). "The purpose of a search warrant issued pursuant to N.J.S.A. 2C:25-28[(j)] is to protect the victim of domestic violence from further violence, and not to discover evidence of criminality." State v. Johnson, 352 N.J. Super. 15, 19 (App. Div. 2002). "[T]here is a strong public policy in this State of prohibiting access to firearms for those individuals determined to have committed acts of domestic violence, even on a prima facie basis, where their access to weapons enhances the risk of harm to the victim." Id. at 33.

Before a judge can issue an order to search for weapons under the PDVA, the judge must find:

> (1) probable cause to believe that an act of domestic violence has been committed by the defendant; (2) probable cause to believe that a search for and seizure of weapons is "necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought," see N.J.S.A. 2C:25-28(f); and (3) probable cause to believe that the weapons are located in the place to be searched.
>
> [Hemenway, 239 N.J. at 117.]

"[P]robable cause requires that the issuing court only have a well-grounded suspicion." Ibid.; see State v. Pinkston, 233 N.J. 495, 509 (2018) (emphasizing that a showing of probable cause "is not a high bar" (quoting District of Columbia v. Wesby, 583 U.S. ___, 138 S. Ct. 577, 586 (2018))).

9                                                    A-5083-18T2

"[E]ven if a domestic violence complaint is dismissed and the conditions abate, forfeiture may be ordered if the . . . defendant's possession of weapons 'would not be in the interests of the public health[,] safety[,] or welfare.'" F.M., 225 N.J. at 510-11 (quoting N.J.S.A. 2C:58-3(c)(5)).

The TRO judge specifically found that there was probable cause to execute the search. As to the first requirement of Hemenway, the judge must find probable cause that the harassment occurred. See 239 N.J. at 117. As to N.J.S.A. 2C:33-4(a), under which the hearing officer and TRO judge found that there was an act of harassment, "there need only be proof of a single such communication, as long as defendant's purpose in making it . . . was to harass and as long as it was made in a manner likely to cause annoyance or alarm to the intended recipient." J.D., 207 N.J. at 477.

In making this determination, the judge relied on the findings by the hearing officer, J.S.'s affidavit, and J.S.'s testimony. Cf. Johnson, 352 N.J. Super. at 34 (declining to find probable cause where the judge solely relied on the content of the recommended TRO and did not have the benefit of a victim affidavit or testimony). Although the judge ultimately denied the FRO, probable cause existed. Defendant informed J.S. that he knew the exact times that the

child was dropped off. The TRO judge found that this was done with the intent to harass and to suggest that he may be following or tracking J.S.

The second prong of Hemenway was satisfied. While the alleged act of domestic violence itself did not involve the use, or threatened use, of a weapon, J.S. testified that defendant had pointed the weapon at her in the past. Additionally, she testified that defendant kept a loaded handgun in his vehicle. In considering the totality of the circumstances, see Sullivan, 169 N.J. at 216, J.S. testified that defendant abused animals in the past, attempted suicide, and has untreated PTSD. In considering all the allegations, the TRO judge had probable cause to find that the search and seizure of the weapons was necessary to protect J.S.'s "life, health or well-being[.]" Hemenway, 239 N.J. at 117 (internal citation omitted).

As to the third requirement of Hemenway, J.S. testified to the types, quantities, and locations of weapons that defendant possessed. She described in detail how defendant stored a weapon in his car. J.S. knew of the weapons and their locations from living with him and from their continuous relationship. Therefore, there was probable cause that the weapons would be located in the places to be searched. Ibid.

II.

Defendant argues that the judge erred in considering his PTSD as a factor for forfeiture of his weapons and FPIC. Defendant contends that he was not afforded notice that the State would rely, in part, on his PTSD—under N.J.S.A. 2C:58-3(c)(3)—and that therefore he was unprepared to respond.

In an action under the PDVA, our review of a forfeiture of firearms and FPIC is deferential. F.M., 225 N.J. at 505-06. "[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis[.]" Id. at 505 (quoting Cordoma, 372 N.J. Super. at 535). Therefore, we "should accept a trial [judge's] findings of fact that are supported by substantial credible evidence." Ibid. (quoting J.W.D., 149 N.J. at 116-17).

"The State retains the statutory right to seek the forfeiture of any seized firearms provided it can show that defendant is afflicted with one of the legal 'disabilities' enumerated in N.J.S.A. 2C:58-3[(c)]." Cordoma, 372 N.J. Super. at 533. N.J.S.A. 2C:58-3(c)(3) provides:

> No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a [FPIC], except as hereinafter

12

set forth. No handgun purchase permit or [FPIC] shall be issued:

. . . .

To any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms . . . unless [he] produces a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof, that he is no longer suffering from that particular disability in a manner that would interfere with or handicap him in the handling of firearms[.]

N.J.S.A. 2C:58-3(c)(5) specifies that a handgun purchase permit or FPIC shall not be issued "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare[.]"

Although the notice and petition for the forfeiture of defendant's firearms did not explicitly state that defendant's PTSD would be used as a basis to support the State's forfeiture petition, defendant had notice that it could be used. The State asserted multiple reasons for its petition for forfeiture, particularly including N.J.S.A. 2C:58-3(c)(5), which states that it "would not be in the interest of public health, safety or welfare" for defendant to possess weapons and/or an FPIC.

J.S., in her complaint against defendant, explicitly cited PTSD as one of her reasons for filing for a TRO. She raised defendant's untreated PTSD in a

hearing with the hearing officer. J.S. also mentioned it to the TRO judge during the hearing. During the FRO hearing, she testified again regarding defendant's PTSD, including on cross-examination by defendant's counsel. Defendant conceded that he was diagnosed with PTSD.

N.J.S.A. 2C:58-3(c)(5) calls for forfeiture "in the interest of the public health," whereas N.J.S.A. 2C:58-3(c)(3) notes that "any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms" may produce a doctor's certification stating that "he is no longer suffering from that particular disability in a manner that would interfere with or handicap him in the handling of firearms[.]" Seeing as defendant conceded that he suffered from PTSD, it is unbelievable to think that he was unaware this could be raised against him, especially because the State cited public health and safety as a reason for the petition for forfeiture.

We therefore conclude that defendant had adequate notice that his PTSD could be raised as a basis for the forfeiture of his weapons and FPIC.

III.

Defendant argues that the judge erred in taking judicial notice sua sponte of the definition of PTSD, as defined by the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). He alleges that the judge "picked

14

and chose those portions of . . . the DSM-5 on PTSD . . . that confirmed [his] beliefs[] and used them as a basis for forfeiture."

N.J.R.E. 201 provides that:

> (b) Notice of Facts.  The court may judicially notice a fact, including:  (1) such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute;  (2) such facts as are so generally known or are of such common notoriety within the area pertinent to the event that they cannot reasonably be the subject of dispute;  (3) specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources whose accuracy cannot reasonably be questioned; and (4) records of the court in which the action is pending and of any other court of this state or federal court sitting for this state.
>
> (c) When Discretionary.  The court may take judicial notice on its own.
>
> (d) When Mandatory.  The court shall take judicial notice if a party requests it on notice to all other parties and the court is supplied with the necessary information.
>
> (e) Opportunity to Be Heard.  On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the matter noticed.  If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.
>
> (f) How Taken.  In determining the propriety of taking judicial notice and the nature of the matter to be noticed, any source of relevant information may be consulted or used, whether or not furnished by a party[.]

A-5083-18T2

"The purpose of judicial notice is to save time and promote judicial economy by precluding the necessity of proving facts that cannot seriously be disputed and are either generally or universally known." State v. Silva, 394 N.J. Super. 270, 275 (App. Div. 2007). It may not be used to take notice of a contested fact or ultimate legal issue in dispute. Ibid.

"[A] text will qualify as a 'reliable authority' if it represents the type of material reasonably relied on by experts in the field." Jacober v. St. Peter's Med. Ctr., 128 N.J. 475, 495 (1992). "General acceptance of the DSM in the psychiatric community is beyond dispute." State v. King, 387 N.J. Super. 522, 544 (App. Div. 2006); see State v. Rosales, 202 N.J. 549, 559 (2010) (deeming DSM-5 an "authoritative treatise").

Defendant's PTSD was undisputed—indeed, he admitted his diagnosis. The issue on the State's petition was how severe defendant's case of PTSD was, and whether it posed a risk to the public health, safety, or welfare. See N.J.S.A 2C:58-3(c)(5). The judge took judicial notice of the general definition of PTSD. The definition provided the judge with some insight as to the condition defendant conceded he had. Defendant did not argue that the DSM-5's definition was incorrect or in dispute, presumably because the definition came from a

widely used and relied upon source. <u>King</u>, 387 N.J. Super. at 544. Therefore, the judicial notice of the DSM-5's definition of PTSD was proper.

IV.

Defendant argues that one of the firearms seized, the Century Arms rifle, does not meet the definition of "assault firearm" and therefore is not a banned firearm.

N.J.S.A. 2C:39-1(w) defines "[a]ssault firearm," and contains a lengthy enumerated list of firearms that meet this definition. Under N.J.S.A. 2C:39-1(w)(2), any firearm that is "substantially identical" to any of these listed firearms also constitutes an assault firearm. We have found that "the definition of 'substantially identical' is sufficiently clear" when read in conjunction with the Attorney General's guidelines. <u>State v. Petrucci</u>, 343 N.J. Super. 536, 547 (App. Div. 2001).

According to these guidelines:

> [A] semi-automatic rifle that has the ability to accept a detachable magazine and has <u>at least [two] of the following</u>:
>
> > 1. a folding or telescoping stock;
> >
> > 2. a pistol grip that protrudes conspicuously beneath the action of the weapon;
> >
> > 3. a bayonet mount;

17

4. a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and

5. a grenade launcher[.]

[Guidelines Regarding the "Substantially Identical" Provision in the State's Assault Firearms Laws issued by Attorney General Peter Verniero to the Director of the Division of Criminal Justice, All County Prosecutors, and All Law Enforcement Chief Executives on Aug. 19, 1996 (hereinafter AG's guidelines) (emphasis added).]

We have held that the AG's guidelines are to be read in conjunction with N.J.S.A. 2C:39-1(w)(1) to make clear the definition of "assault firearm." See Petrucci, 343 N.J. Super. at 547 (affirming that "the definition of 'assault firearm' is sufficiently clear, especially in light of the [AG's] guidelines").

Mr. James Ryan, the State's firearms expert, testified, and the judge acknowledged, that the weapon was able to accept a detachable magazine. Defendant acknowledged that his weapon had a pistol grip. He further recognized that it had a threaded barrel. Defendant stated that the threaded barrel allows for attachment of additional items, such as a flash suppressor, onto the rifle. These admissions alone would meet the AG's definition of semi-automatic rifle.

Defendant argues that the weapon cannot be considered a firearm because there was no proof that it was presently operable. Mr. Ryan examined the weapon and concluded it was operable, however he did not test fire it. In State v. Elrose, 277 N.J. Super. 548, 559 (App. Div. 1994), we concluded that test-firing a weapon was not a prerequisite to finding a weapon operable. In that case, "[t]he trial judge . . . concluded that, even though the State's expert did not test-fire the magazines, there were sufficient inferences based on his testimony that they were operable, assuming that proof of operability was required." Ibid.

Although it is true that Mr. Ryan did not fire the weapon, defendant himself testified that he had previously fired the weapon.

> [Defense counsel:] Did you ever fire that weapon?
>
> [Defendant:] I believe once. One session of firing. I don't know how many rounds I put through it. It wasn't a lot, I know that.
>
> [Defense counsel:] The expert testified there was a muzzle break on that rifle. Were you aware of that?
>
> [Defendant:] There's I believe it's a compensator but that would be splitting hairs but, yes, there is a muzzle attachment that he described as a muzzle break on the end of it.
>
> [Defense counsel:] Okay. Were you aware of that when you bought it?

[Defendant:]  I knew there was a barrel attachment on the end.  I could see it.

Defendant also testified he fired the gun within the last six months.  Based on defendant's testimony and that of the State's expert, the judge found by a preponderance of the evidence that the weapon was an assault rifle.  The record supports this finding.

V.

We reject defendant's argument that the judge unfairly concluded that the rifle was "substantially identical" to a specific firearm listed on the banned list.  Defendant asserts the conclusion was unfair because he did not knowingly possess an assault firearm.

"The knowing violation of the gun laws in and of itself is a sufficient statutory basis for the [judge] to order a forfeiture of seized weapons, without the necessity of the [judge] also finding that the defendant is unfit or a danger to the public in general[.]"  State v. 6 Shot Colt .357, 365 N.J. Super. 411, 417 (Ch. Div. 2003); see State ex rel. C.L.H.'s Weapons, 443 N.J. Super. 48, 60 (App. Div. 2015) (affirming that the "knowing possession of an assault firearm contrary to this State's gun control laws is sufficient basis for forfeiture"); accord In re Osworth, 365 N.J. Super. 72, 81 (App. Div. 2003) (noting that "it does not

20

serve public safety to issue a handgun purchase permit to someone who has demonstrated his willingness to disregard the gun laws of this State").

There was sufficient evidence that defendant knew the weapon was illegal in New Jersey. The judge noted that defendant was familiar with New Jersey firearms laws based on the fact that defendant was charged with possessing illegal assault weapons in 1999. In fact, defendant stipulated to the police report from the incident. The judge pointed out that defendant continued to possess this weapon, even though he testified that he thought it was a prohibited weapon. When asked whether the rifle is prohibited in New Jersey, defendant responded "[i]n its current . . . configuration, yes." Moreover, defendant testified that he was aware of and "generally" familiar with the AG's guidelines.

The record establishes that defendant knowingly possessed an illegal firearm. However, even if the judge did err in holding that defendant knowingly possessed an illegal rifle—which is not the case—the error would be harmless, as it has been established that the weapon was an illegal assault rifle, and therefore it was not necessary for the State to prove that defendant knowingly possessed the firearm. See C.L.H., 443 N.J. Super. at 60; see also R. 2:10-2.

## VI.

Defendant contends that the judge erred by dismissing his motion to dismiss because the forfeiture was not filed within forty-five days of the seizure of his weapons.

According to N.J.S.A. 2C:25-21(d)(3):

> Weapons seized in accordance with the [PDVA] shall be returned to the owner except upon order of the Superior Court. The prosecutor who has possession of the seized weapons may, upon notice to the owner, petition a judge of the Family Part of the Superior Court, Chancery Division, within [forty-five] days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or may object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.
>
> A hearing shall be held and a record made thereof within [forty-five] days of the notice provided above. No formal pleading and no filing fee shall be required as a preliminary to such hearing. The hearing shall be summary in nature. Appeals from the results of the hearing shall be to [this court], in accordance with the law.

Time does not begin to run until the prosecutor either comes into possession of the weapons or learns of the seizure. State v. McGovern, 385 N.J. Super. 428,

22

431 (App. Div. 2006); see also State v. Saavedra, 276 N.J. Super. 289, 294 (App. Div. 1994) (presuming that the prosecutor could not take the required evaluation to make an informed decision whether to seek forfeiture until the prosecutor actually received the weapon or notice of the seizure). "If the statute [was] applied literally, and if the clock began to run on the date of the seizure, . . . the statutory scheme [may] be frustrated." McGovern, 385 N.J. Super. at 431.

On July 24, 2018, the OCPO notified the BCPO that it was in possession of a number of weapons that it had seized from defendant in connection with the domestic violence action. Prior to this date, the BCPO had no knowledge of the seizure and thus could not file a petition for forfeiture. The BCPO filed its petition for forfeiture on September 6, 2018—forty-four days after July 24.

In his reply brief, defendant argues, for the first time, that the State failed to follow the procedures laid out in New Jersey's Domestic Violence Procedures Manual. Defendant failed to raise this below, and therefore we decline to address this argument. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We briefly add that the manual provides that:

> [The] designated law enforcement agency in the issuing county must bring or fax the order and related documents to the sheriff's department or other designated law enforcement agency in the county of the defendant's residence or business.

. . . .

> The return of service should then be faxed back to the sheriff's department or other designated law enforcement agency in the issuing county, which in turn must immediately deliver or fax the return of service to the Family Division in the issuing county.
>
> [Domestic Violence Procedures Manual § 4.7 (2008).]

The manual further provides that the weapons "shall be secured by the prosecutor in the seizing county for storage. At such time that the seized property is needed by the prosecutor or Family Division in the issuing county, the prosecutor in the seizing county shall forward same." Id. at § 3.14.3(B)(2).

The manual "is intended to provide procedural and operational guidance for two groups with responsibility for handling domestic violence complaints in the state of New Jersey—judges and Judiciary staff and law enforcement personnel." Domestic Violence Procedures Manual, Notice at I (2008); see T.M.S. v. W.C.P., 450 N.J. Super. 499, 504-05 (App. Div. 2017). "Th[e] [m]anual is not intended to change any statute or court rule, and in the event a statute or court rule differs from th[e] manual, the statute or rule will control." Domestic Violence Procedures Manual, Notice at I (2008).

As it has been established, N.J.S.A. 2C:25-21(d)(3) requires that the petition for forfeiture be filed within forty-five days of the prosecutor either

coming into possession of the weapons or learning of the seizure. <u>See</u> <u>McGovern</u>, 385 N.J. Super. at 431; <u>see also</u> <u>Saavedra</u>, 276 N.J. Super. at 294. Because the manual is not intended to change any statute or court rule, we find that the BCPO promptly filed for forfeiture, and thus the judge did not err by denying defendant's motion to dismiss.

## VII.

Defendant argues that the judge erred by excluding evidence of an ongoing custody matter and the DCPP investigation into J.S.'s husband. Defendant claims that he sought to introduce this evidence not for the truth of the matter asserted, but rather for his state of mind, for J.S.'s credibility, and for her motivation for filing for a TRO.

"Appellate review of a trial [judge's] discovery order is governed by the abuse of discretion standard." <u>State ex rel. A.B.</u>, 219 N.J. 542, 554 (2014). "Thus, an appellate court should generally defer to a trial [judge's] resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" <u>Ibid.</u> (quoting <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 371 (2011)). However, "[i]n construing the meaning of a statute, court rule, or case law, 'our review is de novo,'" and we owe no deference to the trial judge's legal

conclusions. Id. at 554-55 (quoting Farmers Mut. Fire Ins. Co. v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013)).

Reports and information of child abuse reports are confidential and may only be disclosed to a court "upon its finding that access to such records may be necessary for determination of an issue before it[.]" N.J.S.A. 9:6-8.10a(b)(6); see also N.J. Div. of Youth and Family Servs. v. N.S., 412 N.J. Super. 593, 637 (App. Div. 2010) (holding that release of DCPP records may only be made upon demonstration that disclosure is necessary for determination of an issue before the court). "[A]llowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws." State v. R.W., 104 N.J. 14, 28 (1986). The party seeking the review "should at least advance 'some factual predicate which would make it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw.'" State v. Kaszubinski, 177 N.J. Super. 136, 141 (Law Div. 1980) (citation omitted).

The judge addressed defendant's proffer of the DCPP investigation records and ultimately denied it, stating that admitting evidence of litigation that was not between J.S. and defendant "runs the . . . severe risk of undue consumption of time, and merely cumulative of other evidence which is clear to

[the judge]." The judge explained that he did not wish to "throw a net . . . so wide that it encompasses the possibility that any possible interactions between . . . defendant and [J.S.] may have had over the many years of their relationship."

J.S. was neither the subject nor the filer of the inquiry. The allegations surrounding the investigation do not involve the child. Defendant failed to reasonably demonstrate why this confidentiality should be breached, especially considering that it involved the protected matter of another child. Further, the judge noted that he found the introduction of this evidence would be repetitive of what defendant already demonstrated. Therefore, there has been no abuse of discretion, and the judge did not err by excluding evidence of the DCPP investigation.

## VIII.

Defendant argues that it is a violation of his Second Amendment rights to bar him from further firearm possession. He argues that the statute's use of "public safety" is not narrowly tailored, nor limited in time, and therefore is unconstitutionally broad and vague. Defendant failed to raise this argument below, and therefore we decline to address it. See Nieder, 62 N.J. at 234. However, we add the following brief comments.

The Supreme Court recently addressed this argument and summarily rejected it.  F.M., 225 N.J. at 507-08 (noting that N.J.S.A. 2C:58-3(c)(5) and (c)(8) have been upheld against Second Amendment challenges); see In re Dubov, 410 N.J. Super. 190, 197 (App. Div. 2009) (expressly finding that N.J.S.A. 2C:58-3(c)(5) is not unconstitutionally vague); see also Crespo v. Crespo, 201 N.J. 207, 210 (2010) (holding PDVA constitutional because "the right to possess firearms clearly may be subject to reasonable limitations"); In re Winston, 438 N.J. Super. 1, 10 (2014) (holding that District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. City of Chicago, 561 U.S. 742 (2010), do not render N.J.S.A. 2C:58-3(c)(5) unconstitutional).

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5083-18T2